

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00011-CV

THE STATE OF TEXAS, Appellant

V.

5 GAMBLING MACHINES, Appellees

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CV-23-46217

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin
Chief Justice Stevens dissenting without opinion

# MEMORANDUM OPINION

Following a post-seizure show-cause hearing,[1] the trial court determined that five devices seized from a Fannin County convenience store are not gambling devices as that term is defined in Section 47.01(4) of the Texas Penal Code.  *See* TEX. PENAL CODE ANN. § 47.01(4).

The parties to the show-cause hearing were the State, Appellant, and the Appellees, S&M, Inc., the owner and operator of Quick Stop Food Store in Savoy, Texas; POM of Texas LLC, Inc., the "software manufacturer" of the seized machines (referred to as Pace-O-Matic or "Pace"); and Republic Amusements, LLC, the Texas "operator" for Pace.  We refer to Appellees, collectively, as Pace.

The trial court made its ruling via thirty-four findings of fact and twenty-one conclusions of law.  As a result of those findings and conclusions, the trial court ordered the return of the devices themselves, as well as the return of cash seized at the same time as the devices.

Via a consolidated brief, the State appeals.[2]

The State's brief, however, does not contain a standard of review.[3]  As shown below, a trial court's findings of fact are reviewed with deference.  Nor does the State specify which particular finding(s) it challenges.  Generally, this must be done.[4]

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 18.18(f); *Hardy v. State*, 102 S.W.3d 123, 127 (Tex. 2003).

[2]The State initially filed two separate forfeiture proceedings (one regarding the devices, and the other, the proceeds) each citing both Chapter 59 and Article 18.18 of the Texas Code of Criminal Procedure.  A third case was brought by the parties who are now Appellees.  That case sought the return of the seized devices and proceeds.  The trial court heard all three cases together.  Accordingly, we issue this opinion, as well as opinions in our cause numbers 06-24-00012-CV and 06-24-00013-CV.  Since the State only challenges the element of a gambling device under Article 18.18, we will limit our review in all cause numbers to Article 18.18.

2

Given the deferential standard of review, we affirm.

## I.  Review of the Trial Court's Factual Findings

The State asserts that "[t]he trial court erred in finding that the devices seized were not gambling devices and the cash seized did not constitute proceeds from gambling."

### A.  Standard of Review

"If a case proceeds to a bench trial and the trial court enters findings of fact . . . appellate courts defer to the trial court's findings of fact—so long as they are supported by the record . . . ." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020).

The trial court heard the evidence in person.  We did not.  That matters.  *See Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 n.1 (Tex. 2017) (per curiam) (noting the "practical concerns" presented if fact-findings are made by a trial judge who did not hear the evidence, observing:  "it 'would be impossible for a judge who had not heard the testimony to express in the form of conclusions of fact the impression which the conflicting evidence made upon the mind of one who heard it'" (quoting *Storrie v. Shaw*, 75 S.W. 20, 21–22 (1903))).

---

[3]The absence of a standard of review in the State's brief means that the State's arguments are untethered from a standard of review.  As a result, were we to consider the State's arguments, this Court would be put in the position of surmising for the State how the arguments relate to a standard of review that the State did not provide.  That said, briefing waiver is disfavored:  "we have instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule."  *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) (quoting *Republic Underwriters Ins. Co. v Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004)).

[4]As with the absence of a standard of review, the absence of a challenge to specified finding(s) puts the Court in the position of surmising the true nature of the State's appeal.  Generally, "an appellant challenging the sufficiency of the evidence offered in a nonjury trial must challenge specific findings of fact."  *Boucher v. Thacker*, 609 S.W.3d 206, 216 (Tex. App.—Texarkana 2020, no pet.) (quoting *Green v. Alford*, 274 S.W.3d 5, 17 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).  However, "a challenge to an unidentified finding of fact may be sufficient if the reviewing court—after giving consideration to the number of findings, the nature of the case, and the underlying elements of the applicable legal theories—can fairly determine from the argument the specific finding being challenged."  *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 582 (Tex. App.—San Antonio 2017), *aff'd by* 593 S.W.3d 324 (Tex. 2020).

By their nature, findings of fact are the trial court's resolution of conflicting testimony: "fact findings are not necessary when the matters in question are not disputed." *Id.* at 135 (quoting *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006)).

Accordingly, "[a] trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). That being so, the standard of review is as follows:

> Evidence is legally insufficient to support a [trial court's fact]finding when (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. When determining whether legally sufficient evidence supports a finding, we must consider evidence favorable to the finding if the factfinder could reasonably do so and disregard evidence contrary to the finding unless a reasonable factfinder could not.

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017) (footnote omitted) (citation omitted).

## B.    Analysis Regarding the Devices

The trial court made factual findings applying Section 47.01 of the Texas Penal Code. Under Section 47.01, a "[g]ambling device" is defined as:

> any electronic, electromechanical, or mechanical contrivance . . . that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

TEX. PENAL CODE ANN. § 47.01(4).[5]

### 1. Trial Court Findings Regarding Skillful Play of "Follow Me"

We begin with the trial court's findings that a skillful player can recover 105% of the consideration paid to play by use of the "Follow Me" mode of game play:

> 15. . . . . [T]he player is always offered the opportunity to continue gameplay through the "Follow Me" feature of the game.

> 16. Every session of "Follow Me" is capable of being played successfully. . . . A skillful player can win Follow Me every single time it is played. . . . [A] skillful player will win every time.

> . . . .

> 23. With skillful play, a player will be awarded a prize, with said prize value greater than the consideration, on fully 100% of games played.

As set forth above, we review the trial court's factual findings with deference. These findings are supported by the record.

The findings of the trial court and the testimony in the record focus our attention on "Follow Me." In broad strokes, the devices at issue are video consoles involving three modes of play: base, bonus, and "Follow Me." The trial court heard considerable testimony regarding all the permutations of the base and bonus modes. We do not recount those permutations here. This is because the trial court found in findings of fact 14 and 15 that a skillful player can play the base and bonus modes "optimally" and still recover less than 105% of the consideration paid to play. Indeed, the trial court found that the "Follow Me" mode is contingent on the outcome of the "base" and "bonus" modes. The finding regarding what triggers "Follow Me" is supported

---

[5]This statute also has listed inclusions and exclusions which are not contended to apply to the devices at issue here. *See* TEX. PENAL CODE ANN. § 47.01(4)(A), (B).

by the record. Dr. Olaf Vancura, Pace's expert, testified that the "Follow Me" mode is initiated based on the result of the base and bonus modes: "if you play the puzzle without error and you haven't yet won 105 percent then you are just given the opportunity to play Follow [M]e."

"Follow Me" is a pattern-repetition game involving memorizing and repeating twenty sequences increasing to twenty lit circles. The process can take nine minutes or more. Andrew Camplen, a supervisor of the Pace compliance team, testified the "Follow Me" sequence does not change as it increases, and a player can write down the sequence for "Follow Me." Camplen testified that "every time you play you can win 105 percent guaranteed." Vancura testified that "Follow [M]e," if successfully completed, "tops you off at 105 percent" so that "there is always a way to win[,] to get back 105 percent of what you put in as consideration."

Thus, the record supports the trial court's findings that the effect of "Follow Me" is that the award of something of value, namely 105% of the consideration paid to play, is determined by skill.

The State effectively concedes as much regarding "Follow Me" itself. The State candidly admits that "[p]laying 'Follow Me' makes it possible for the player who lost credits [in other game modes] to win back that amount, plus an additional five percent." The State argues as follows:

> [Pace's] assertion is that because Follow Me is completely a skill-based game it renders the device to not be a gambling device. *This premise would perhaps be true if the device presented only the game Follow Me*, but it does not operate that way, nor did [Pace's] designers intend for it to be played in that fashion.

(Emphasis added).

The dispute, therefore, turns to the role of "Follow Me" in the game as a whole.

6

## 2. Trial Court Findings that a Skillful Player Will Win Every Play of the Game

The analysis above focused on the trial court's findings regarding the "Follow Me" mode of game play. The trial court also made fact-findings regarding the role of "Follow Me" in the game as a whole. That can be seen by revisiting the findings above, as well as findings 15, 16, and 19 through 23:

15. . . . . [T]*he player is always offered* the opportunity to continue gameplay through the "*Follow Me*" feature of the game.

16 Every session of "Follow Me" is capable of being played successfully. . . . A skillful player can win Follow Me every single time it is played. . . . *This feature removes chance from the award of a prize and ensures that a skillful player will win every time*.

. . . .

19. At the hearing, the State provided no evidence that, in playing the Seized Games, the award of a prize is determined solely or partially by chance.

20. . . . [F]*or a skillful player, chance is entirely eliminated in the determination of whether to award a prize* . . . .

21. *A single game play on the Seized Games comprises multiple components* . . . .

22. *The game affords all players the ability to win more than the cost to play on each and every play of the game.*

23. With skillful play, a player will be awarded a prize, with said prize value greater than the consideration, *on fully 100% of games played*.

(Emphasis added).

Those findings are supported by the record. The trial court heard testimony from Camplen and Vancura that all the game's modes should be considered as a whole, and that, for a

7

skillful player, every play of the game is guaranteed to result in recovery of 105% of the amount paid to play. The following exchange summarizes Vancura's testimony: "Is chance present in the determination of whether to award a prize to the skillful player? A. No." The trial court, by its findings, chose to credit that testimony.

As discussed at the outset, the State did not provide a standard of review. As a result, the State makes no argument that, under the standard of review, other evidence conclusively establishes the opposite of the testimony relied on by the trial court.

Similarly, the State hints at, but does not request, a construction of Section 47.01.[6] As noted above, we show lenience to the State regarding failure to brief the standard of review and failure to identify which particular finding(s) it challenges. But there comes a point at which "it is not our duty to review the record, research the law, and fashion a legal argument for an appellant when he fails to do so." *Birnbaum v. CSD Van Zandt, LLC*, No. 12-23-00282-CV, 2024 WL 2798849, at *2 (Tex. App.—Tyler May 31, 2024, pet. denied) (mem. op.) (citing *Zhang v. Cap. Plastic & Bags, Inc.*, 587 S.W.3d 82, 90 (Tex. App.—Houston [14th Dist.] 2019, pet. denied)). Statutory construction can involve the balancing, and hopefully harmonization, of concepts in tension. *See Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 730 (Tex. 2024) (noting that courts may consider the purpose of a statute, but at the same time, the courts should not look beyond the text of the statute). The meaning of mundane words can be elusive. *Id.* at 725

---

[6]Absent from the State's brief are: "construe," "construction," and "ambiguous." Instead, the State bases its argument on "the plain and ordinary meaning" of the words of Section 47.01(4). The State points to "Tex. A.G. Op. KP-0245 (Feb. 6, 2023)." Tex. Att'y Gen. Op. No. KP-0245 (2023). That opinion cautions that, "[b]ecause it involves the resolution of fact questions, we do not opine on whether a particular amusement machine constitutes a gambling device." *Id.* We are mindful of that caution. The State, though, does not take that caution into account by addressing how that opinion is impacted by the trial court's fact-findings made regarding the "particular amusement machine[s]" in this case. *Id.*

("[W]e cannot tell *solely* from the word itself whether 'and' is used in the joint sense or the distributive sense."). This is a civil *in rem* forfeiture proceeding based on a provision of the Texas Penal Code that could be used for criminal prosecution. We additionally note, then, that "[t]he Court of Criminal Appeals has emphasized that an appellate court has no obligation to construct and compose issues, facts, and arguments for an appellant." *Bierwirth v. State*, No. 03-17-00314-CR, 2019 WL 577154, at \*4 (Tex. App.—Austin Feb. 13, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017)). We, therefore, do not construe Section 47.01(4).

Because evidence supports the trial court's factual findings, we defer to them. Given the deferential standard of review, we affirm the trial court's findings regarding the overall nature of the devices.

### C.   Analysis Regarding Cash Proceeds

The trial court entered a fact-finding that the seized cash proceeds at issue are not proceeds of gambling activities:

> The State did not present any evidence that the Seized Funds were proceeds of gambling. The State did not trace the Seized Funds to any act of gambling. The Movants presented evidence to the contrary and demonstrated that the Seized Funds were not proceeds of gambling.

The State admits that the cash proceeds seized are not gambling proceeds if the seized machines are not gambling devices. In light of the trial court's fact-findings regarding the nature of the devices, which we affirm, and given the State's concession that the nature of the devices

9

dictates the outcome regarding the seized cash proceeds, we affirm the trial court's finding of fact that the seized cash proceeds are not gambling proceeds.[7]

## II. Conclusion

Based on the circumstances of this case—the evidence presented to the trial court, the factual findings of the trial court, the issue presented on appeal, and the deferential standard of review—we affirm the challenged factual findings of the trial court.

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:       October 9, 2024
Date Decided:        April 30, 2025

STEVENS, C.J., dissents without opinion.

---

[7]Having affirmed the trial court's fact-findings regarding the devices and the proceeds, we need not and do not address the State's second issue regarding whether there was probable cause for the seizure.

10